COURT OF APPEALS
DECISION
DATED AND FILED

August 6, 2026

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.     **2025AP386-CR**

Cir. Ct. No.  **2002CF48**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT IV

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

CHAD R. SPRENGER,

DEFENDANT-APPELLANT.

APPEAL from an order of the circuit court for Waupaca County: TROY L. NIELSEN, Judge. *Affirmed*.

Before Graham, P.J., Kloppenburg, and Nashold, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM. Chad R. Sprenger appeals a circuit court order denying his motion for sentence modification based on a new factor. In 2001 and

2002, Sprenger was taking a prescribed selective serotonin reuptake inhibitor (SSRI) medication when he abused his infant daughter, eventually fracturing her skull and causing her death. He asserts that new evidence showing that the use of SSRIs can cause violent behavior in some people is a new factor that warrants sentence modification. We conclude that Sprenger has not shown the existence of a new factor as a matter of law, and affirm on that basis.

## BACKGROUND

¶2 Sprenger's daughter, A.B., was born in June 2001.[1] In August 2001, she was taken to the hospital for an issue with her leg. Doctors discovered that A.B.'s left tibia had a displaced fracture that appeared to be 7 to 10 days old. They also discovered other bone fractures in various stages of healing, including fractures to both sides of A.B.'s ribs, and concluded that these injuries were consistent with something other than accidental trauma. Police investigated, but could not determine who was responsible for the injuries. A.B. was placed with a maternal aunt and uncle, and Sprenger's wife (A.B.'s mother) suggested that Sprenger's mother, who had been a frequent caretaker, may have hurt A.B. Sprenger agreed with this accusation. After several months, Sprenger and his wife were ruled out as potential abusers, and A.B. was returned to their home.

¶3 In March 2002, A.B. was again taken to the hospital after Sprenger's wife found A.B. unresponsive in her crib. Police spoke to Sprenger, who said that the family dog got in his way as he was carrying A.B. down the stairs the previous night, causing Sprenger to fall. He said that A.B. had cried for a short time after

---

[1] To protect the privacy of the victim, we refer to the victim using initials that do not correspond to her real name.

the fall, but then stopped, and that he did not notice anything unusual when he put A.B. to bed. After a detective indicated that he did not believe Sprenger was being truthful, Sprenger admitted that A.B. was not injured by falling down the stairs. Sprenger stated that he had become angry when A.B. was crying and that he threw A.B. onto the hardwood floor of his living room. Sprenger further admitted that he had been responsible for A.B.'s injuries in August 2001: on one occasion during which she would not stop crying, he swung her from the floor to a changing table by her leg, injuring her leg and ankle, and on another occasion, he squeezed her with his arm, injuring her ribs.

¶4      Four days after being taken to the hospital in March 2002, A.B. died from her injuries. The State charged Sprenger with five counts: first-degree reckless homicide for A.B.'s death in 2002, one count each of physical abuse of a child and substantial battery for A.B.'s leg injuries in August 2001, and one count each of physical abuse of a child and substantial battery for A.B.'s rib injuries in August 2001.

¶5      At Sprenger's plea hearing, he told the circuit court that he was currently being treated for depression and was taking Prozac and Loxopine as prescribed. At the time of the March 2002 incident with A.B., Sprenger had been taking the SSRI Zoloft for one year as prescribed by a doctor for depression and mood stabilization. The court accepted Sprenger's plea of no contest to the reckless homicide and two substantial battery charges. The court dismissed the child abuse charges, reading them in for sentencing purposes.

¶6      At sentencing, the circuit court explained the factors that it was required to consider, including the gravity of the offenses, in determining a sentence. The court discussed the "very aggravating circumstances in this case,"

3

including Sprenger's failure to take advantage of "opportunities … to admit his responsibility" for his actions and to seek help, and concluded that the "whole series of what occurred between August [2001] until March [2002] is so very aggravating and egregious that the gravity of the offense certainly outweighs" the other factors. Ultimately, the court imposed consecutive sentences totaling 32 years of initial confinement and 21 years of extended supervision.

¶7 In November 2023, Sprenger moved for sentence modification based on a new factor. He asserted that several studies published in the years following his sentencing showed that taking SSRI medications can cause violent behavior in some people who take them, most often in patients between the ages of 15 and 24. Sprenger also pointed to his institutional records, which he alleged showed that he was more prone to feelings of anxiety and aggression when he was taking Zoloft. Sprenger further asserted that the "link" between his SSRI prescription and the violent acts leading to his convictions, which occurred only after he began taking Zoloft and when he was 23 and 24 years old, was unknown to the circuit court at the time of sentencing and material and relevant to the court's considerations at sentencing.

¶8 The circuit court (which was not the same court that originally sentenced Sprenger in 2002) denied Sprenger's motion in a written decision "following a review of the entire file." While the court acknowledged that the "studies and institutional records are new information," it concluded that Sprenger failed to show that this information was "'highly relevant' to the sentences initially imposed," and therefore was not a "new factor" that could warrant sentence modification as a matter of law. Sprenger appeals.

## DISCUSSION

¶9     A "new factor" is defined as "'a fact or set of facts highly relevant to the imposition of sentence, but not known to the trial judge at the time of original sentencing, either because it was not then in existence or because, even though it was then in existence, it was unknowingly overlooked by all of the parties.'" *State v. Harbor*, 2011 WI 28, ¶40, 333 Wis. 2d 53, 797 N.W.2d 828 (quoted source omitted).  Information "highly relevant" to the imposition of sentence is material that affects a factor the sentencing court relied on in determining a sentence.  *See, e.g.*, *State v. Armstrong*, 2014 WI App 59, ¶16, 354 Wis. 2d 111, 847 N.W.2d 860; *State v. Carroll*, 2012 WI App 83, ¶10, 343 Wis. 2d 509, 819 N.W.2d 343. To determine the factors a sentencing court relied on, we look to the court's "actual words" in its sentencing remarks.  *See Carroll*, 343 Wis. 2d 509, ¶10.

¶10     Whether the facts presented by a defendant constitute a new factor is a question of law that we review independently.  *Harbor*, 333 Wis. 2d 53, ¶36.  If a new factor is established, the circuit court has discretion to determine whether it justifies sentence modification.  *Id.*, ¶37.  If the defendant fails to establish the existence of a new factor, there is no need for the court to consider whether modification of the sentence is warranted.  *Id.*, ¶38.

¶11     As the circuit court here correctly explained, the primary factors that a court is required to consider in sentencing are: the gravity of the offense, the character and rehabilitative needs of the defendant, and the need to protect the public.  *See, e.g.*, *State v. Paske*, 163 Wis. 2d 52, 62, 471 N.W.2d 55 (1991). After considering all relevant information, including secondary factors such as aggravating circumstances, the defendant's history, and the defendant's degree of culpability, the weight to be given each factor is within the discretion of the

sentencing court; a sentence may be based on any one of the primary factors or a combination of factors. *State v. Davis*, 2005 WI App 98, ¶¶13-14, 281 Wis. 2d 118, 698 N.W.2d 823.

¶12    Here, the circuit court made very clear that the gravity of the offense led to the sentence it imposed, stating that it "cannot emphasize enough the gravity of this offense" and that this factor "certainly outweighs the protection of the public and … any personal characteristics of the defendant." In discussing the gravity of the offense, the court said that the "very aggravating circumstances in this case" "are overwhelming and cannot be ignored." Chief among these circumstances was that Sprenger committed multiple acts of violence over a seven-month period; "this was not a case of an isolated situation where someone lost control and the result was this tragedy." The court discussed at length the fact that the police first investigated A.B.'s injuries in August 2001. In all the time that passed from then until Sprenger inflicted the fatal injuries on A.B. in March 2002, instead of taking responsibility and getting help, Sprenger lied to his wife, his family, and the authorities, and attempted to project blame onto his mother.

¶13    Even if any or each incident of Sprenger's violence against A.B. was brought about because of Sprenger's prescribed Zoloft, that new information does not explain why Sprenger lied, shifted blame, and tried to protect himself instead of taking any action to protect A.B. during the seven-month period in which he inflicted violence and injuries on A.B. It is evident from the circuit court's sentencing remarks that the seven-month period during which Sprenger had the opportunity to—but did not—get help for himself or take other actions to protect his daughter was the driving force behind the sentence imposed. In this particular case, information related to a potential reason for Sprenger's violence—but not for the months of lies and blame-shifting and failure to act to protect his daughter

from his recurrent violent conduct that ultimately led to A.B.'s death, which were the circumstances that the court explicitly and repeatedly cited as the reason for the sentence imposed—is therefore not a new factor as a matter of law.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.